

**Melaleuca**
*The Wellness Company*

3910 South Yellowstone Hwy. • Idaho Falls, Idaho 83402-6003
Legal Department • 208 522-0700 • Fax 208 534-2063

March 10, 2009

*Via e-mail and fax*

Alexander J. Shvartsman, Esq.
Morrison & Foerster
555 West Fifth Street, Suite 3500
Los Angeles, CA 90013
E-mail: ashvartsman@mofo.com
Fax No. (213) 892-5454

    Re: *Herbalife v. Ford et al.*, CV-07-2529-GAF

Dear Mr. Shvartsman:

I have received your letter dated March 9, 2009 regarding the deposition subpoenas Herbalife delivered on March 6 to Frank VanderSloot and McKay Christensen seeking their appearances at depositions on March 13 ("Subpoenas"). The complete and utter lack of diligence Herbalife has shown in seeking these depositions will make it very difficult, if not impossible, to schedule the depositions in a manner that does not violate the March 13 discovery cutoff in the above-captioned litigation ("Litigation"). This lack of diligence by Herbalife has also pervaded its efforts in general to obtain discovery from Melaleuca, making the process much more difficult and time-consuming than necessary. These observations are consistent with Magistrate Judge Fernando M. Olguin's recent observation that "it appears that plaintiff's inability to schedule ... depositions was due to its own lack of diligence."

As for the Subpoenas currently at issue, we understand that Federal Rule of Civil Procedure 45 has been interpreted by some courts to require that a motion to quash be filed in order to release a person subpoenaed for a deposition from appearing. However, Herbalife's lack of diligence regarding the Subpoenas left no chance for a motion to quash to be filed, briefed, heard, and decided before the March 13 discovery cutoff in the Litigation. As such, we felt it was prudent to put Messrs. VanderSloot's and Christensen's objections to the Subpoenas on the record as promptly as possible.

Herbalife made no attempt to serve the Subpoenas until March 3, just 10 days before the March 13 discovery cutoff. The Subpoenas were not actually delivered until the server made his second effort to serve on March 6 (with the full cooperation of a Melaleuca employee who arranged an appointment for the server to meet with Messrs. VanderSloot and Christensen within about 24 hours after they returned from out of town). It is also regrettable that Herbalife made no contact whatsoever with Mr. VanderSloot or Mr. Christensen prior to March 3 to inquire as to their

**Exhibit C to LaClare Affidavit - Page 1**

Alexander J. Shvartsman, Esq.
March 10, 2009
Page 2

availability to accept service or to appear on March 13. If Herbalife had at least made some contact with Messrs. VanderSloot and/or Christensen, there may have been a greater chance of scheduling their depositions in time for the discovery cutoff.

Herbalife has also shown a lack of diligence by failing to appear for a prior scheduled deposition of Melaleuca. Herbalife previously demanded (with a January 5, 2009 subpoena) that Melaleuca produce a 30(b)(6) witness for a deposition on March 2 at 10:00am. Melaleuca never filed a motion to quash that subpoena, but Herbalife did not even bother to show up for the deposition. I appeared 10 minutes before the specified time at the specified location (the Red Lion Hotel in Idaho Falls) with a 30(b)(6) witness who was prepared to testify. We waited for 30 minutes. We looked in each of the Hotel's conference rooms two times and saw that nobody representing Herbalife was there. We also asked several different Red Lion Hotel employees involved with maintaining the Hotel's conference-room calendar whether they had any record of a deposition scheduled that morning for Herbalife, and each employee stated that they had no record of any such event.

Indeed, by now it is safe to say that Herbalife's lack of diligence is a pattern extending for the last 15 months. A description of some of the earlier elements of this pattern is set forth in my February 17, 2009 letter to your colleague Nancy Thomas.

Not only has Herbalife failed to diligently conduct discovery with respect to Melaleuca and its employees, it has also made recent filings containing blatant inaccuracies about Melaleuca's responsiveness – apparently in a misguided effort to blame Melaleuca for the problems resulting from Herbalife's own carelessness. For example, contrary to the recently filed declaration of Nancy Thomas, the process server who delivered subpoenas to Messrs. VanderSloot and Christensen did not make "several attempts" to serve them. In reality, he delivered the Subpoena's on his second attempt, with the help and cooperation of Melaleuca. A Melaleuca employee cooperated with the server (1) by informing him on March 3, the date of the server's first attempt to serve, that Messrs. VanderSloot and Christensen were out of town until late on March 5 and would be back in their offices on March 6, and (2) by coordinating a time for service on March 6. An appointment was arranged for March 6, and during that appointment the server delivered the Subpoenas.

As is clearly set forth above, in seeking discovery from Melaleuca and/or its employees, Herbalife has shown a continual lack of diligence and a willingness to mischaracterize Melaleuca's responsiveness in court filings. Notwithstanding these significant faults on the part of Herbalife and the burden they have placed on Melaleuca and its employees, Messrs. VanderSloot and/or Christensen are willing to work with you to move forward with depositions upon your written agreement to the following conditions:

- First, Herbalife's application to extend the March 13 discovery cutoff (the granting of which we believe would not serve the interests of justice for reasons including the lack of diligence discussed above) must be granted prior to Messrs. VanderSloot and/or Christensen agreeing to give any testimony. Given the significant demands on their time as the CEO and President, respectively, of Melaleuca, neither Mr. VanderSloot nor Mr.

**Exhibit C to LaClare Affidavit - Page 2**

Alexander J. Shvartsman, Esq.
March 10, 2009
Page 3

    Christensen will be able to adjust their schedules on such short notice to be deposed on or before March 13.

- Second, Herbalife must send letters to Messrs. VanderSloot and Christensen releasing them from any obligation to appear on March 13 – in order to avoid the need for any motion to quash.

- Third, Herbalife would need to agree to take any depositions of Messrs. VanderSloot and/or Christensen upon written questions as provided for in Federal Rule of Civil Procedure 31. Given that Messrs. VanderSloot and Christensen are non-parties (and in light of the fact that Herbalife resisted the deposition of its own CEO) we believe that written deposition questions are an appropriate way to reduce the potential burden on Messrs. VanderSloot and Christensen.

- Fourth, Herbalife would need to demonstrate that the depositions of Messrs. VanderSloot and Christensen would not cause it to go over the ten-deposition limit imposed by Federal Rules of Civil Procedure 30 and 31 – with the March 2nd 30(b)(6) deposition for which Herbalife chose not to show up counted as one deposition taken by Herbalife. We believe it would be reasonable for Melaleuca to get credit in this way for preparing and showing up for a deposition that Herbalife scheduled but did not show up to take, and with respect to which it did not bother to notify Melaleuca of its intent not to show up. We understand that Herbalife may have already taken 8 or more depositions, such that the addition of the 30(b)(6) deposition scheduled for March 2 could cause the depositions of both Mr. VanderSloot and Mr. Christensen to be in excess of the 10-deposition limit. If Herbalife has only one more deposition available under this analysis, Herbalife could choose whether to depose Mr. VanderSloot or Mr. Christensen.

- Fifth, assuming an arrangement is agreed upon for the taking of Mr. VanderSloot's and/or Mr. Christensen's depositions, Herbalife would need to agree that it will not seek any further discovery from Melaleuca or its officers or employees in connection with the Litigation. We believe this is more than reasonable given that Melaleuca, as a non-party, has already produced over 4,500 pages of documents to Herbalife and appeared for a 30(b)(6) deposition scheduled by Herbalife.

- Sixth, Herbalife would need to articulate some legitimate basis for its belief that Messrs. VanderSloot and Christensen are likely to have information that is relevant to the claims or defenses asserted by the parties in the Litigation and that would warrant the burden of being deposed. We understand that Herbalife has made reference to evidence reportedly indicating that the defendants have communicated with employees of Melaleuca. However, it is unclear why Herbalife believes that Messrs. VanderSloot or Christensen would have any information regarding such communications that defendants were not able to provide to Herbalife in their depositions. In particular, we would like to hear why you believe the depositions of the CEO and the President of non-party Melaleuca are warranted when you have asserted that the deposition of Michael Johnson, the CEO of the plaintiff Herbalife, was not warranted.

Exhibit C to LaClare Affidavit - Page 3

Alexander J. Shvartsman, Esq.
March 10, 2009
Page 4

I would be happy to discuss the proposal outlined above with you, and will try calling you today to do so. If we are unable to come to an agreement about the depositions of Messrs. VanderSloot and Christensen, then we will be forced to file motions to quash due to the manner in which Herbalife has approached the Subpoenas.

As a final note, I do not believe any of the fees you promised to tender this morning have arrived. Please let me know when and how you believe you have cured this deficiency with the Subpoenas.

Sincerely,

*Michael LaClare*

Michael LaClare

Exhibit C to LaClare Affidavit - Page 4