James D. LaRue (ISB No. 1780)
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
Post Office Box 1539
Boise, Idaho 83701-1539
Telephone: (208) 343-5454
Facsimile: (208) 384-5844

Charles E. Patterson (*pro hac vice*)
CPatterson@mofo.com
Sean P. Gates (*pro hac vice*)
SGates@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Defendant Herbalife Int'l of America, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANK L. VANDERSLOOT and MCKAY CHRISTENSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation,<br><br>Defendant. | Case No.: 1:09-mc-06613-EJL-REB<br><br>RESPONSE TO THE MOTION TO QUASH SUBPOENAS ISSUED TO FRANK L. VANDERSLOOT AND MCKAY CHRISTENSEN AND FOR PROTECTIVE ORDER FILED ON APRIL 14, 2009 [DOCKET NO. 5] |

**I.      INTRODUCTION**

Herbalife International of America, Inc. ("Herbalife") seeks the depositions of Frank VanderSloot and McKay Christensen because discovery has revealed that they have unique, personal knowledge of facts relevant to the underlying litigation. While Messrs. VanderSloot

and Christensen assert that they are "not likely able to provide any . . . significant information," evidence obtained in the underlying case shows otherwise.

Herbalife only sought these depositions after it discovered that Messrs. VanderSloot and Christensen ("Movants") have injected themselves into the underlying litigation. That case, *Herbalife Int'l of Am., Inc. v. Ford*, Case No. CV 072529 GAF (FMOx) (the "California Litigation"), concerns eight former Herbalife distributors ("Defendants") who left Herbalife and joined Melaleuca, a competitor of Herbalife. Herbalife alleges that Defendants have unlawfully used Herbalife's trade secrets and violated their agreements with Herbalife by raiding Herbalife's distribution chain, recruiting Herbalife distributors to defect to Melaleuca. Defendants counterclaim, alleging that Herbalife's structure, distributor contracts, and conduct constitute unfair competition, an endless chain scheme, and false advertising and that Herbalife interfered with Defendants' prospective economic advantage.

In making their motion, Movants failed to inform the Court that (as revealed by deposition testimony in the underlying case) they have had multiple discussions with Defendants regarding the California Litigation. Furthermore, Movants admit that they have "worked together with the California Defendants in addressing the California Litigation." (Movants' Br. at 6.) Movants' counsel has also admitted that Melaleuca has "pursued a joint defense of [the underlying case] from the time of the filing of Herbalife's complaint."

Movants therefore possess relevant information. It is clear that they have discussed with Defendants the facts relevant to the claims and defenses in the underlying litigation. They admit working with Defendants concerning these issues. Movants are therefore likely to have information such as whether Defendants used Herbalife trade secrets, statements by Defendants against interest, admissions by Defendants, potential sources of further information, facts

underlying Defendants' counterclaims, and other relevant facts.

Movants' involvement in the underlying litigation is also relevant for another reason. Herbalife has been led to believe that Melaleuca is bankrolling and directing the California Litigation. Though Defendants have improperly refused to answer questions aimed at confirming this belief, they have nonetheless painted themselves as individuals at the mercy of litigation brought by a large public company represented by a large law firm. It is apparent that this will be Defendants' theme at trial. Herbalife is therefore entitled to know whether Melaleuca is indeed financing the California Litigation—which has counterclaims brought against its competitor—and if so, why. As the CEO and President of Melaleuca, Movants are in a unique position to answer these questions.

The Court should deny Movants' motion because they fail to bear the burden of proving that the subpoenas subject them to an undue burden or that they were issued solely to "annoy, oppress, and harass."

First, the evidence demonstrates that Movants possess first-hand knowledge of relevant information. Movants' argument that Herbalife served the subpoenas solely to "annoy, oppress, and harass" is therefore pure dross.

Second, while Movants raise the issue of a common interest privilege, they have not satisfied their burden to show that their communications were in fact privileged. Under applicable California law, to claim privilege for a disclosure to another party, it is the Movants' burden to show (1) the communications were otherwise privileged, (2) they have a common legal interest with Defendants, (3) the communications were within the bounds of that common legal interest, and (4) the disclosures were reasonably necessary for the purpose for which the attorneys were consulted. *See Oxy Res. Cal. LLC v. Super. Ct.*, 115 Cal. App. 4th 874 (2004).

Movants have presented no evidence to support the application of a privilege.

Third, the Movants' status as apex employees does not excuse them from testifying in this matter. They have unique personal knowledge of relevant information: they were the ones in discussions with Defendants and "worked together" with Defendants concerning the underlying litigation. The boilerplate, conclusory affidavits of Movants that they are too busy to be bothered come nowhere close to satisfying their burden.

Accordingly, Herbalife respectfully asks that the Court deny the Movants' motion to quash and motion for protective order.

## II.     BACKGROUND INFORMATION

### A.     Background on the California Litigation

Herbalife filed the underlying suit to halt misuse of Herbalife's trade secrets and breach of contract by eight former Herbalife distributors who used Herbalife's confidential information to solicit its current distributors and customers for Melaleuca, Inc. On December 11, 2007, the California district court granted Herbalife a preliminary injunction, finding Herbalife had presented substantial evidence that Defendants "have misused protected information in competition with Herbalife." (Order filed Dec. 12, 2007 [Docket No.[1] 77] at 3.) The Ninth Circuit affirmed the entry of the preliminary injunction with minor modifications. *Herbalife Int'l of Am. Inc. v. Ford*, 287 Fed. Appx. 600, 601-02 (9th Cir. 2008) (copy attached to Herbalife's Notice of Ruling [Docket No. 113]).

Defendants filed an amended counterclaim, alleging intentional interference with prospective economic advantage, negligent interference with prospective economic advantage,

---

[1] All docket numbers contained herein refer to the docket for *Herbalife Int'l of Am., Inc. v. Ford*, C.D. Cal. Case No. CV 072529 GAF (FMOx).

unfair competition under California Business & Professions Code § 17200, violation of endless chain schemed law under California Penal Code § 327, and false advertising under California Business & Professions Code § 17500. (Docket No. 98.) Defendants assert that Herbalife's alleged conduct has harmed their ability to compete and caused them to lose income as Melaleuca distributors. (*Id.*)

On April 3, 2009, the California district court issued an order extending the discovery deadline to May 15, 2009, for, *inter alia*, the scope and nature of Melaleuca's involvement in the parties' dispute. (Shvartsman Aff. ¶ 12 & Ex. K.)

### B. Movants' Involvement in the Underlying Litigation

Mr. VanderSloot is the CEO of Melaleuca, and Mr. Christensen is its President. (VanderSloot Aff. ¶ 1; Christensen Aff. ¶ 1.) Depositions of Defendants have established that Messrs. VanderSloot and Christensen have had multiple conversations with Defendants regarding the California Litigation. (Ex. B[2] [J. Orr 2/12/09 Dep. Tr. at 226:15-227:9; 228:7-24; 232:8-233:16; 234:3-235:12]; Ex. C [K. Orr 2/13/09 Dep. Tr. at 285:7-286:4]; Ex. D [N. Roth 2/24/09 Dep. Tr. at 89:17-91:21]; Ex. E [B. Roth 2/24/09 Dep. Tr. at 154:22-156:4]; Ex. F [D. Thompson 3/2/06 Dep. Tr. at 241:6-243:3]; Ex. G [R. Ford 3/4/09 Dep. Tr. at 176:3-22]; Ex. H [J. Fisher 3/6/09 Dep. Tr. at 128:21-129:13].) Some, but not all, of the conversations have taken place within the presence of either in-house counsel for Melaleuca or attorneys for both Defendants and Melaleuca. (*Id.*)

For instance, Jeff Orr, one of the Defendants, testified that he and his wife (another defendant) have had at least three conversations with Mr. VanderSloot regarding the California Litigation. (Ex. B [J. Orr 2/12/09 Dep. Tr. at 227:21-25].) For one conversation, no attorneys

---

[2] Unless otherwise noted, referenced exhibits are attached to the concurrently filed Affidavit of

were present.  (*Id.* [J. Orr 2/12/09 Dep. Tr. at 232:9-233:4].)  For another, in-house counsel for Melaleuca was present (as well as all of the other Defendants), and for the third, attorneys for both Melaleuca and Defendants were present, as were the rest of the Defendants.  (*Id.* [J. Orr 2/12/09 Dep. Tr. at 228:1-24; 234:3-18].)  Mr. Christensen was also a participant in the two conversations where counsel was present.  (*Id.*)

Herbalife has sued Defendants for intentional interference with prospective economic advantage based in part on the fact that Defendants have knowingly and intentionally made misrepresentations regarding Melaleuca's products and business model.  (Shvartsman Aff. ¶ 13 & Ex. L.)  Defendants have countersued Herbalife for unfair competition and intentional and negligent interference with their Melaleuca businesses.  (*Id.* ¶ 14 & Ex. M.)  Movants recently admitted that they and Defendants have "pursued a joint defense of [the underlying case] from the time of the filing of Herbalife's complaint."  (*Id.* ¶ 16.)

### III. THE MOVANTS BEAR A HEAVY BURDEN OF PROVING WHY THE DISCOVERY SOUGHT SHOULD BE DENIED

Under Rule 30(a)(1), a party may take the testimony of "any person" by deposition upon oral examination, without leave of court.  Fed. R. Civ. P. 30(a)(1).  A "party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied[.]"  *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006).  "It is very unusual . . . for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances, as such an order would likely be in error."  *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, at *7 (S.D. Cal. Mar. 22, 2007).  As such, "the rules place the burden on the discovery resister to raise and sustain any objections to discovery."

---

Alex J. Shvartsman.

*Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 381 (S.D. Ind. 1994); *United Phosphorus v. Midland Fumigant*, 164 F.R.D. 245, 248 (D. Kan. 1995) ("Unless otherwise specifically shifted under the Rules, the burden of objecting to proposed discovery is on the party from whom discovery is sought.").

Movants therefore bear the heavy burden of showing they are entitled to resist discovery. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 398 (D.C. Cir. 1984) (burden of proving that a subpoena is oppressive is heavy); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("defendants were required to carry a heavy burden of showing why discovery was denied").  They have not done so.

### IV.     MOVANTS POSSESS RELEVANT INFORMATION

Movants contend that they "are not likely able to provide Herbalife with any significant information that is relevant to the claims or defenses pending in the California." (Movants' Br. at 6.)  That is a remarkable claim.  Movants had several, lengthy discussions with Defendants regarding the underlying litigation.  They have "worked with" Defendants to prosecute the case. They are likely directing and financing the litigation.  And facts related to the rules, marketing plans, and products of Movants' company are relevant to the claims at issue.

As the Ninth Circuit has explained, "[r]elevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).  Furthermore, a "district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt, the court should be permissive." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987) (quotations and citations

omitted).  *See also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. July 8, 2005) ("A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." (citations omitted)).

The evidence demonstrates that Movants possess relevant information.

### A. Movants Have Discussed the Underlying Litigation With Defendants and Worked Together With Them to Prosecute the Litigation

Deposition testimony in the underlying case shows that Movants have had multiple discussions with Defendants regarding the California Litigation.  For instance, one of the Defendants, Jeff Orr, testified that he and his wife (also a defendant) discussed the case with Mr. VanderSloot on three separate occasions.  (Ex. B [J. Orr 2/12/09 Dep. Tr. at 227:21-25].)  These were not casual conversations; Mrs. Orr admitted that at least one of these conversations lasted from 45 minutes to an hour.  (Ex. C [K. Orr 2/13/09 Dep. Tr. at 284:13-285:6.)  Each of the other Defendants participated in similar conversations with Movants.  (Ex. D [N. Roth 2/24/09 Dep. Tr. at 89:17-91:21]; Ex. E [B. Roth 2/24/09 Dep. Tr. at 154:22-156:4]; Ex. F [D. Thompson 3/2/06 Dep. Tr. at 241:6-243:3]; Ex. G [R. Ford 3/4/09 Dep. Tr. at 176:3-22]; Ex. H [J. Fisher 3/6/09 Dep. Tr. at 128:21-129:13].)

Despite admitting to these conversations, Defendants improperly refused to answer questions such as: (1) whether they discussed their litigation strategy with Movants; (2) whether Defendants discussed with Movants their efforts to recruit Herbalife distributors; (3) whether Defendants informed anyone at Movants about the Herbalife distributors they had contacted; (4) whether they had discussed with Movants Herbalife's contention that downline lists and lineage reports are trade secrets; (5) whether Defendants' lawyers had expressed their views about this case to Movants; (6) whether they had discussed Herbalife's rules with anyone at Movants; and (7) whether they had discussed with Movants their claims against Herbalife.  (*Id*.)

The answer to these questions is clearly "yes." Movants now admit that they have "worked together with the California Defendants in addressing the California Litigation." (Movants' Br. at 6.) Moreover, Movants' counsel has now admitted that Melaleuca has "pursued a joint defense of [the underlying case] from the time of the filing of Herbalife's complaint." (Shvartsman Aff. ¶ 16.) These admissions decimate Movants' relevancy argument. *See, e.g.*, *Royal Surplus Lines Ins. v. Sofamor Danek Group*, 190 F.R.D. 463, 467 (W.D. Tenn. 1999) (rejecting relevancy argument were nonparty was involved in dispute and claimed a joint defense privilege).

It is thus undeniable that Movants have information relevant to the claims and defenses in the underlying litigation—they discussed these at length with Defendants. These conversations may have included a myriad of information (such as statements against interest by Defendants, admissions of material facts, information regarding other possible sources of discovery, etc.) relevant not only to Herbalife's claims but also to Defendants' counterclaims as well.

> **B.     Whether Movants are Financing and Directing the Litigation is Relevant Given Defendants' David v. Goliath Trial Theme**

Whether Movants' are bankrolling and directing the California Litigation is also clearly relevant. Throughout the litigation, Defendants have attempted to present themselves as beleaguered individuals at the mercy of litigation brought by a large public company represented by a large law firm. (Shvartsman Aff. ¶ 17.) For instance, Defendants have argued that:

- "Herbalife made a tactical decision to spend Defendants into the ground . . . ."

- "Defendants decided not to use their limited resources chasing information that Herbalife would never provide."

- "The Defendants' burden has been heightened by the fact that Defendants do not have access to anywhere near the same resources available to Herbalife, a billion dollar corporation that is represented by one of the largest law firms in the world."

- "Defendants are eight individuals who are represented by two small firms . . . ."

- "Defendants used their limited financial resources . . . targeting key witnesses . . . ."

- "Defendants justifiably fear that Herbalife will only use this extension to attempt to further crush the Defendants under a barrage of paper and filings . . . ."

(*Id.*)  It is clear that Defendants intend to use this theme at trial.  Yet they refused to state whether Melaleuca is financing their litigation against Herbalife.  (Ex. C [K. Orr 2/13/09 Dep. Tr. at 297:5-13]; Ex. D [N. Roth 2/24/09 Dep. Tr. at 88:8 19]; Ex. E [B. Roth 2/25/09 Dep. Tr. at 154:22-155:11]; Ex. F [D. Thompson 3/2/09 Dep. Tr. at 242:16-243:3]; Ex. G [R. Ford 3/4/09 Dep. Tr. at 193:7-17]; Ex. H. [J. Fisher 3/6/09 Dep. Tr. at 209:25-210:14].)

Herbalife is therefore entitled to know whether Melaleuca is indeed financing and directing the California Litigation, including the counterclaims brought against its competitor. Not only are Messrs. VanderSloot and Christensen are in a position to answer these questions, they are the only witnesses capable of giving a first-hand explanation as to Melaleuca's motives.

### C.     Information on Melaleuca Is Relevant to the Parties' Claims and Defenses

Information from Melaleuca is also relevant because both parties' claims turn on facts regarding the rules, marketing plans, and products of Movants' company.  Herbalife alleges that Defendants have knowingly and intentionally made misrepresentations regarding Melaleuca's products and business model.  (Shvartsman Aff. ¶ 13 & Ex. L.)  Defendants have countersued Herbalife for unfair competition and intentional and negligent interference with their Melaleuca businesses.  (*Id.* ¶ 14 & Ex. M.)

Melaleuca's business model and marketing plans are therefore relevant.  For example, Defendants contend that they have lost income as Melaleuca distributors due to Herbalife's alleged conduct.  (Shvartsman Aff. ¶ 15 & Ex. N.)  In answers to interrogatories, Defendants

stated that "many Herbalife distributors would have joined them at Melaleuca if Herbalife did not commit its acts of unfair competition and false advertising" and that

> Responding Parties believes [*sic*] that they will lose income in the amount of approximately $416,599 for the year 2009 as a result of Herbalife's unlawful conduct. Responding Parties believe that they would have earned approximately $504,574 from Melaleuca in 2009, but instead will only make approximately $87,975 in their Melaleuca business in 2009, as a result of Herbalife' s unlawful conduct.

(*Id*.) This puts Melaleuca's business model and marketing plans at issue.

Evidence concerning Melaleuca's rules is also relevant. As discussed more fully below in Section V, Defendants and Melaleuca are claiming that their communications are privileged because their interests in the California Litigation are common. But in fact, they actually have *adverse* interests, as demonstrated by the fact that Defendants are countersuing on the basis that Herbalife's rules are unlawful, and yet Melaleuca's rules are generally as restrictive as Herbalife's (if not more so). (*See* Shvartsman Aff. ¶¶ 10-11 & Exs. I-J.) Thus, Defendants' counterclaims could set precedent that is against Melaleuca's interests, so Defendants and Melaleuca cannot have a common interest regarding these issues.

Accordingly, information on Melaleuca, such as Melaleuca's rules, marketing plans, and products, is relevant and discoverable, particularly if that information was discussed by Movants and Defendants.

## V. MOVANTS HAVE NOT DEMONSTRATED THAT COMMUNICATIONS BETWEEN THE MOVANTS AND DEFENDANTS ARE PRIVILEGED

Movants argue that their communications with Defendants regarding the underlying litigation is subject to a common interest privilege. (*See* Movants' Br. at 6.) This argument is flawed for three reasons: (1) Movants failed to bear the burden to prove that the communications remain privileged despite admitted disclosure to a third party; (2) the communications are not, in

fact, privileged; and (3) at least one and maybe more of the communications at issue took place outside the presence of any counsel whatsoever, so there is no possibility that privilege applies.

### A. The Movants Have Not Met Their Burden of Showing that the Disclosures Did Not Waive Any Privilege

California law governs the determination of attorney-client privilege issues in this matter because the California Litigation is based on diversity. *See* Fed. R. Evid. 501; *Bank of the W. v. Valley Nat'l Bank*, 132 F.R.D. 250, 251 (N.D. Cal. 1990). Under California law, "[b]ecause privileges prevent the admission of relevant and otherwise admissible evidence, they should be narrowly construed." *People v. Sinohui*, 28 Cal. 4th 205, 212 (2002) (internal quotations omitted). Thus, "[t]he burden of establishing that a particular matter is privileged is on the party asserting that privilege." *San Diego Prof'l Ass'n v. Super. Ct.*, 58 Cal. 2d 194, 199 (1962). Where an attorney-client communication was disclosed to another party, the disclosure is presumed to waive the privilege. Cal. Evid. Code § 912(a). The proponent of the privilege therefore bears the burden of showing that the disclosure did not destroy the confidential nature of the communication and that the disclosure was "reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted." *Id*. at § 912(d); *see also Bank of the W.*, 132 F.R.D. at 260; *Sony Computer Entm't Am., Inc. v. Great Am. Ins. Co.*, 229 F.R.D. 632, 634 (N.D. Cal. 2005).

These principles apply with equal force where there is an assertion of a "joint defense" or "common interest" agreement between the client and the third party. There is no separate "joint defense" or "common interest" privilege under California law. *See OXY Res.*, 115 Cal. App. 4th at 888-89. The question in California remains whether the disclosure to the third party constitutes a waiver. *Id*. at 890-91. The participants in the exchange must therefore have a sufficient common interest to demonstrate that there was a reasonable expectation of

confidentiality and that the communication was reasonably necessary to accomplish the purpose for which the client's lawyer was retained. *Id.*

To support their claim of a common interest privilege, Movants must therefore show that: (1) Melaleuca and Defendants have common legal (as opposed to business) interests in this litigation; (2) the communications were within the scope of that interest; and (3) the communications were reasonably necessary in order for Defendants' attorneys to litigate the California case. *See OXY Res.*, 115 Cal. App. 4th at 888-91.

Movants have not satisfied these requirements. They merely assert *ipse dixit* that their knowledge falls into the realm of the "common interest privilege." (Movants' Br. at 6.) This bare contention is plainly insufficient to satisfy the required showing.

### B. In Any Case, the Communications between Melaleuca Executives and Defendants Are Not Privileged

Even if Movants did try to satisfy the parameters for establishing that the communications with Defendants are privileged, they would fail. Melaleuca and Defendants do not share common legal interests. Melaleuca is not a party to the California Litigation. The fact that Melaleuca may have an interest in the outcome of the California Litigation is not enough. *See McKesson HBOC, Inc. v. Super. Ct.*, 115 Cal. App. 4th 1229, 1237-38 (2004) (non-waiver requires that the interests of the parties be aligned, not just overlapping).

This is particularly true for Defendants' counterclaims. Melaleuca has no legitimate common legal interest in these. Melaleuca may be interested in seeing these counterclaims well prosecuted against Herbalife, their competitor. But this is a business, not a legal, interest. This interest is not sufficient to preclude waiver. *See Oxy Res.*, 115 Cal. App. 4th at 890; *Bank of the W.*, 132 F.R.D. at 251-52; *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (a common legal, as opposed to commercial, interest is a basic requirement); *accord Campinas*

*Found. v. Simoni*, 2004 U.S. Dist. LEXIS 23580, *7-8 (S.D.N.Y. Nov. 18, 2004) (diverse litigants in various civil actions all wanted to succeed in recovering sum of money from opposing party, but desire to succeed is not enough to support a finding of common interest); *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) ("The [common interest] doctrine does not extend to communications about a joint business strategy that happens to include a concern about litigation.") (citation omitted); *Blanchard v. Edgemark Fin. Corp.*, 192 F.R.D. 233, 236-37 (N.D. Ill. 2000) (transmission of privileged information made where a party's financial but not legal interests were implicated caused waiver).

Furthermore, Movants have not shown that the communications between them and Defendants were limited to "matters of joint concern." *See OXY Res.*, 115 Cal. App. 4th at 890. Thus, for instance, even if there were a common interest with regard to the issues pertaining to Defendants' representations about Melaleuca's products and business model, there is no evidence that the communications were limited to this subject. Moreover, Defendants' claim that Herbalife's rules are unlawful puts them in a position *adverse* to Melaleuca. Melaleuca's rules are generally as restrictive as Herbalife's, if not more so. (*See* Shvartsman Aff. ¶¶ 10-11 & Exs. I-J.) Melaleuca's Rule 20, entitled "Non-Solicitation and Conflicts of Interest," forbids a Melaleuca marketing executive from recruiting another marketing executive or customer into "another business venture" for the course of the marketing executive agreement and for 12 months thereafter. (*Id.* ¶ 11 & Ex. J at 132.) In contrast, Herbalife's Rule 8A only requires a distributor to refrain from recruiting other distributors or Herbalife customers into another *multi-level marketing company or direct sales company*—not any business venture whatsoever— during the course of the distributorship and for 12 months thereafter. (*Id.* ¶ 10 & Ex. I at 77.)

Because Melaleuca's rules are as restrictive (if not more so) than Herbalife's,

Defendants' counterclaims could set precedent that is against Melaleuca's interests.  Thus, Defendants and Melaleuca cannot have a common interest regarding these issues, and communications about these issues would waive any applicable privilege.  *Cf. First Pac. Networks v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574, 578-79 (N.D. Cal. 1995) (holding insurance carrier's disclosures to *Cumis* counsel waived attorney-client privilege because parties' interests were adverse).  Privilege is waived if material is shared between parties whose interests are merely overlapping but not aligned.  *See McKesson*, 115 Cal App. 4th at 1237-38; *Campinas Found.*, 2004 U.S. Dist. LEXIS 23580 at *7-8; *Walsh*, 165 F.R.D. at 19.

Movants also cannot show that their communications were reasonably necessary for the accomplishment of the purpose for which their and the Defendants' attorneys were consulted.  Cal. Evid. Code § 912(d).  As the court in *Bank of the West* explained, the "key concept" under California law is "the holder of the privilege shows that it had to make the disclosures to the third persons *in order to accomplish the purpose for which the client retained the lawyer*."  132 F.R.D. at 260 (emphasis in original); *see also Nidec Corp.*, 249 F.R.D. at 579 ("[E]ven if there were a common legal interest, the common interest exception requires that the communication at issue be designed to further that [legal] effort.") (citation omitted; second alteration in original).

In *Bank of the West*, for instance, Bank of the West ("BOW") retained the Buchalter law firm for the purpose of defending the bank in litigation with Technical Equities Corporation ("TEC").  132 F.R.D. at 250-51, 260.  BOW disclosed to Valley National Bank ("VNB") communications with the Buchalter firm that were otherwise privileged, but BOW claimed that these communications remained privileged under the common interest doctrine.  *Id.* at 251-52.  The court rejected that argument because BOW failed to show that the disclosures to VNB were reasonably necessary for BOW's counsel to litigate the case with TEC:

> In our case, BOW had retained the Buchalter firm for the purpose of defending BOW in the TEC litigation. It was conduct by BOW that was in issue in the TEC litigation, not conduct by VNB. Since VNB had not had an active relationship with TEC, and since no conduct by VNB was in issue in the TEC litigation, it simply cannot be said that BOW's lawyers had any need to share substantial information with or acquire substantial information from VNB in order to defend BOW in the pending suits. The Buchalter lawyers certainly could have represented BOW in the TEC litigation quite well without sharing their legal analyses, tactical plans and settlement strategies with VNB and its counsel.

*Id.* at 260. *Bank of the West* is right on point. The Defendants hired counsel to defend them in litigation with Herbalife. Melaleuca is not a party to that litigation. Further, it is "conduct by [the Defendants] that was in issue in the [Herbalife] litigation, not conduct by [Melaleuca]." *Bank of the W.*, 132 F.R.D. at 260. Thus, "it simply cannot be said that [the Defendants'] lawyers had any need to share substantial information with or acquire substantial information from [Melaleuca] in order to defend [the Defendants] in the pending suits." *Id.* Defending against Herbalife's claims and bringing counterclaims in this case simply do not require Melaleuca's involvement. *See Roush v. Seagate Tech., LLC*, 150 Cal. App. 4th 210, 225 (2007) (finding disclosure waived privilege despite claimed common interest where party failed to show disclosure was reasonably necessary to prosecute her case). Thus, Movants cannot show that such a consultation was necessary. *See Sony*, 229 F.R.D. at 634 (finding privilege waived because party failed to show that disclosure of attorney-client communications was necessary).

### C. Not All Communications Between Melaleuca Executives and Defendants Took Place in the Presence of Counsel

Furthermore, at least one communication between Defendants and Mr. VanderSloot took place outside the presence of counsel. (Ex. B [J. Orr 2/12/09 Dep. Tr. at 232:9-233:4].) There is no debate that this communication is not privileged. There may also be other communications with Movants that took place outside the presence of counsel, but Herbalife will not know until it

has an opportunity to depose the Movants.

### VI.   THE FACT THAT THE MOVANTS ARE APEX EMPLOYEES DOES NOT EXCUSE THEM FROM TESTIFYING

Given that Messrs. VanderSloot and Christensen possess first-hand knowledge relevant to the California Litigation, the fact that they are apex employees does not excuse them from testifying in this matter.[3]  "[W]here a corporate officer may have *any* first hand knowledge of relevant facts, the deposition should be allowed." *Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, at *1 n.5 (N.D. Cal. July 27, 2007) (italics in original).  This is not a case in which lower level employees likely have the sought after information; Movants personally participated in the relevant discussions and likely authorized the financing of the underlying litigation.  *See also Anderson v. Air West, Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976) (approving denial of Howard Hughes's motion for protective order because he "probably had some knowledge" regarding substance of the plaintiffs' claims); *WebSideStory*, 2007 U.S. Dist. LEXIS 20481 at *7 ("[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.")

Movants claim that they should not be deposed because they have "little if any first-hand knowledge about the specifics of (1) the circumstances under which these individuals became Melaleuca Marketing Executives or (2) any efforts by these individuals to build a business as Melaleuca Marketing Executives."  (VanderSloot Aff. ¶ 4; Christensen Aff. ¶ 4.)  This carefully crafted wording addresses only two narrow issues, but it does not address whether either

---

[3] The fact that Herbalife sought a protective order to preclude the deposition of its CEO (Movants' Br. 9) is clearly irrelevant.  In any event, the Magistrate Judge in the underlying litigation denied Herbalife's motion, in part because Herbalife did not, as Movants have not here, file for a stay of the deposition prior to the noticed date.  (*See* 3/6/09 Order re: Discovery Motions [Docket No. 175] at 3-4.)  *See also Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d

Mr. VanderSloot or Mr. Christensen (1) obtained relevant information through their discussions with Defendants regarding the California Litigation, (2) has any knowledge of Melaleuca's role in bankrolling and directing the California litigation, or (3) has relevant knowledge regarding Melaleuca's business model, marketing plans, or products.  *See Zamora v. D'Arrigo Bros. Co.*, 2007 WL 806518, at *6 (N.D. Cal. Mar. 15, 2007) (granting plaintiff's motion to depose defendant's president where "Defendant has submitted no affidavit from Mr. D'Arrigo swearing that he has no information about company equal employment and personnel policies or that he had nothing to do with Ms. Zamora's situation[]").

Herbalife is entitled to discover for itself the extent of the Movants' knowledge of the facts.  "[A] claimed lack of knowledge on behalf of the deponent does not alone provide sufficient grounds for a protective order."  *WebSideStory*, 2007 U.S. Dist. LEXIS 20481, at *8.  *See also In re Air Crash at Taipei, Taiwan*, 2002 WL 32155478, at *4 (C.D. Cal. Nov. 6, 2002) (plaintiffs entitled to test a claim of lack of knowledge by deposing the witness); *Zamora*, 2007 WL 806518, at *6 ("Plaintiffs are entitled to test Mr. D'Arrigo's knowledge in a deposition, rather than relying on the assertions of defendant's lawyers.").

Movants have inserted themselves into the California Litigation by conferring with Defendants regarding that case, "working together with the California Defendants in addressing" the underlying litigation, and likely financing and directing that litigation.  Given the extent of the Movants' voluntary involvement in the case, they cannot hide behind their non-party status for purposes of their motion.  *See, e.g.*, *Royal Surplus Lines*, 190 F.R.D. at 467.

Movants' knowledge is not rendered duplicative by the fact that Defendants participated in the discussions of the underlying litigation:  "The mere fact . . . that other witnesses may be

---

257, 269 (9th Cir. 1964).

able to testify as to what occurred at a particular time or place does not mean that a high-level corporate officer's testimony would be 'repetitive.' Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred." *First Nat'l Mortgage Co. v. Fed. Realty Inv. Trust*, 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) (internal quotation and citation omitted); *see also Blankenship*, 519 F.2d at 429 (finding district court had erred in denying plaintiff opportunity to take George Hearst's deposition based on the objection that Hearst's testimony would be repetitive). For example, with regard to the conversation that took place between Mr. VanderSloot and Mr. and Mrs. Orr, Mr. Orr recalled that he discussed the California Litigation with Mr. VanderSloot, but he was hazy on some of the details. (*See* Ex. B [J. Orr 2/12/09 Dep. Tr. at 232:8-233:16].) It may be that Mr. VanderSloot remembers the discussion better, or recalls different facets of the conversation. Accordingly, Herbalife has a right to explore this event with him.

In support of the Movants' assertion that, as apex employees, they are too busy and too crucial to their organizations to testify at deposition, the Movants' submitted conclusory, boilerplate affidavits that are identical, aside from minor personal details. (*See* VanderSloot Aff.; Christensen Aff.) The sum total of Movants' evidence on this point is:

> Given the many important responsibilities I have as the [CEO/President] of Melaleuca, any obligation to make time to have my deposition taken (including time for preparation) would place a considerable burden on me. I always have many demands on my time, and these demands are now particularly significant because of the very serious economic conditions currently affecting commerce in general. Being required to prepare for and attend a deposition would force me to set aside and/or delay other important work no matter when the deposition is scheduled.

(*Id.* ¶ 3, respectively.)

Courts routinely reject such excuses. "[T]he fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *WebSideStory*,

2007 U.S. Dist. LEXIS 20481 at *8; *accord CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) (stating same). Based on Movants' logic, no apex employee could be deposed until the United States has recovered from the current recession. That is not the law.

Movants have faulted Herbalife for failing to take discovery from Messrs. VanderSloot and Christensen through less intrusive means (Movants' Br. at 7-8), but Movants' idea of "less intrusive means" consists of Herbalife limiting the scope of its discovery and giving up the ability surrendering its right to follow up on any testimony Movants may give. Specifically, Movants would only agree to allow the depositions of Movants if, *inter alia*, (1) Herbalife took the depositions through written questions as opposed to oral examination, (2) Herbalife blindly agreed in advance of the depositions to seek no further discovery from Melaleuca, and (3) Herbalife agreed that Movants would not need to answer "questions relating to any communications between Defendants and Melaleuca (or any of its employees) in which counsel for either participated." (*See* LaClare Aff. Ex. D at 2-3.) These unduly restrictive conditions are plainly unacceptable.

### VII.    CONCLUSION

Herbalife respectfully requests that the Court deny the Movants' motion.

DATED this 23rd day of April, 2009.         ELAM & BURKE, P.A.


By:  /s/
     James D. LaRue, Of the Firm
     Attorneys for Defendant